**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ONE HOUR AIR CONDITIONING
FRANCHISING, LLC,**

    **Plaintiff,**

v.                              **Case No.  8:13-cv-3278-T-30JSS**

**DALLAS UNIQUE INDOOR COMFORT,
LTD.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Dallas Unique Indoor Comfort, Ltd.'s Daubert Motions (Dkts. 77, 78, 79), Defendant's Motion for Summary Judgment (Dkt. 80), Plaintiff One Hour Air Conditioning Franchising, LLC's Motion for Summary Judgment (Dkt. 82), and the parties' Responses (Dkts. 83-87) and Replies (Dkts. 95-99) thereto.  The Court, upon review of the filings, record evidence, and being otherwise advised in the premises, concludes that the motions should be denied.

## BACKGROUND

On December 31, 2013, Plaintiff One Hour Air Conditioning Franchising, LLC filed this action against Defendant Dallas Unique Indoor Comfort, Ltd. alleging four claims: breach of contract (Count I); unfair competition (Count II); trademark infringement (Count

III); and false designation of origin (Count IV).[1] The breach of contract claim is premised on Dallas Unique's termination of the parties' franchise agreement; specifically, One Hour claims that the manner in which Dallas Unique continued its residential air conditioning and heating business materially breached the franchise agreement. The Court now turns to the relevant facts surrounding this purported breach.

One Hour developed a business system for residential air conditioning and heating services. It operates through authorized franchisees. One Hour's business focuses on the punctuality of its service. One Hour's logo depicts its name with a round-faced stopwatch. Immediately underneath the company name is its trademarked slogan "Always on Time . . . Or You Don't Pay a Dime!" The "always on time" slogan is also prominently featured in One Hour's advertising and marketing materials, as well as in its telephone greeting.

According to One Hour's President, Mark Baker, One Hour's emphasis on punctuality as a foundation of its brand positioning is the essence of One Hour's business. One Hour's Operations Manual, provided to all One Hour franchisees, also states the importance of the "always on time" promise and instructs its franchisees that if they fail to arrive to a client's home during the specified appointment window, they must repair the system at no charge for parts or labor.

One Hour trademarked the use of its "on time" slogans. According to One Hour's expert, Bruce Silverman, One Hour's unique position as a professional HVAC service company that shows up on time is an important differentiation to consumers. According to

---

[1] Counts II-IV have been dismissed with prejudice (Dkts. 75, 76).

One Hour's expert, Thomas J. Maronick, who conducted an online survey of HVAC consumers in the Dallas metropolitan area, the factor of having the technician arrive on time or the service is free was rated important by 90.9% of respondents. He opined that the promise of punctuality backed up by the "on time or you don't pay a dime" guarantee is a true differentiation.

In 2004, Dallas Unique's predecessor executed five separate but identical franchise agreements with One Hour for territories in the Dallas-Ft. Worth metropolitan area. Dallas Unique became the franchisee through an addendum to the franchise agreements. The franchise agreement allowed Dallas Unique to operate a residential air conditioning and heating company as a One Hour franchisee for a ten year term. Dallas Unique operated under the name "One Hour Air Conditioning & Heating." Under the franchise agreement, Dallas Unique was permitted to use One Hour's licensed trademarks. Notably, the franchise agreement did not contain a non-compete agreement.

Before becoming a One Hour franchisee, Dallas Unique operated its HVAC business under variations of the name Dallas Unique Indoor Comfort. Randy Kelly, Dallas Unique's President, acknowledged that timeliness was not a component of his company's business model or marketing program.

In 2013, Dallas Unique decided to terminate the franchise agreement with One Hour. On December 24, 2013, Kelly provided written notice of its termination of the franchise agreement in an e-mail to Baker. The e-mail stated that Dallas Unique intended to continue operating a residential air conditioning business in the Dallas-Ft. Worth area and that it

would be operating under its new name, "On Time Experts." The e-mail included a picture of Dallas Unique's new color scheme and logo, as depicted on one of its service vehicles. The logo consisted of the name On Time Experts next to a round-faced clock imposed on a running figure holding a wrench. Immediately underneath the company name is the slogan "When Comfort Can't Wait!" Kelly acknowledged that the guarantee of timeliness is a key element in the consumer's decision process; it was the main feature that he wished to convey to his customers through his company's name, logo, and brand.

The franchise agreement includes post-termination obligations, two of which form the basis of One Hour's breach of contract claim in this case. Section 16.6(D) requires that upon termination for any reason, Dallas Unique shall immediately "cease to operate the Franchised Business under the System or otherwise and thereafter not, directly or indirectly, represent to the public that such Franchised Business is operated in association with [One Hour] or the System, or hold itself out as a present or former franchisee of [One Hour]." Section 16.6(E) requires that Dallas Unique immediately "cease to use, directly or indirectly, in advertising or in any other manner whatever, any of the Licensed Marks, any name or mark *similar* to any of the Licensed Marks, any other identifying characteristics or indicia of operation of the System, and any confidential standards, methods, procedures and specifications associated with the System." (emphasis added).

"Franchised Business" is defined in Section 2.1(N) and Section 1.1 of the franchise agreement as a One Hour "residential air conditioning and heating services, maintenance, repairs and equipment replacement business." The "System" is defined in Section 2.1(MM)

as "the specified business format and system and related standards, specifications and procedures that Franchisor has for operating a Franchised Business, including but not limited to, the Operations Manual and System Standards."

The franchise agreement does not define the word "similar." It also does not define the term "identifying characteristics" or "indicia of operation."

One Hour's breach of contract claim focuses on Dallas Unique's operation of "On Time Experts," with the logo of a sprinting clock, and Dallas Unique's use of other identifying characteristics and indicia of the operation of One Hour's System that are provided to One Hour's franchisees in the Operations Manual.

Dallas Unique has filed three Daubert motions to exclude three of One Hour's experts: Scott D. Hampton, Bruce G. Silverman, and Thomas J. Maronick. These motions are without merit, particularly because this case is scheduled for a bench trial and the Court may address any arguments related to the reliability and helpfulness of the experts' testimony during trial.

The parties also move for summary judgment on the remaining breach of contract claim. Both motions are denied because the record is rife with disputed material facts.

## DISCUSSION

### I. Daubert Motions

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Under Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before permitting expert opinion testimony, the court must make certain that the expert employs "in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The court must act as gatekeeper to prevent speculative and unreliable "expert" testimony from reaching the jury. *See Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005) (noting that the "task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*"). The gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'" *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert,* 509 U.S. at 595).

As gatekeeper, the court makes three inquiries: (1) first, whether the expert is qualified to testify competently regarding the matters that he intends to address; (2) second, whether the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) third, whether the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562-63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.,* 539 F. App'x 963, 965-67 (11th Cir. 2013). The party offering the expert

opinion testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness. *See Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)); *see also Sumner v. Biomet, Inc.,* 434 F. App'x 834, 841 (11th Cir. 2011); *Frazier,* 387 F.3d at 1260.

Although rulings on admissibility under *Daubert* inherently require the court to conduct an exacting analysis of the proffered expert's methodology, it is not the court's role to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003). Indeed, the gatekeeper role is not intended to supplant the adversary system or the role of the jury. *See id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *see also U.S. v. Ala. Power Co.,* 730 F.3d 1278, 1282-85 (11th Cir. 2013) (explaining that the *Daubert* inquiry "is not intended to supplant" cross-examination and presentation of contrary evidence); *Costa v. Wyeth, Inc.,* No. 8:04-cv-2599-T-27MAP, 2012 WL 1069189, at *2 (M.D. Fla. Mar. 29, 2012).

Importantly, in the case of a bench trial, the court's gatekeeping function is even more constrained. The court, sitting as trier of fact, is in the best position to distinguish between persuasive and shaky expert evidence at trial. It is widely accepted that the importance of the pretrial exclusion process contemplated by *Daubert* is lessened in that situation. *See, e.g., United States v. Brown,* 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("There is less need for the

gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *N.W.B. Imports & Exports, Inc. v. Eiras,* No. 3:03-cv-1071-J-32-MMH, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005) ("Because this is a non-jury trial, the gatekeeping purpose of *Daubert* is not implicated. The Court will therefore receive [the expert's] testimony, make a final admissibility decision and, if admissible, accord it the weight, if any, it deserves."); *see also Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").

Dallas Unique moves to exclude experts Scott D. Hampton, Bruce G. Silverman, and Thomas J. Maronick. Hampton is One Hour's expert on damages. His opinion provides an accounting and calculations related to Dallas Unique's net sales and operating profit from the date of the breach of contract. He also provides an opinion on One Hour's damages based on Dallas Unique's net sales multiplied by the appropriate percentage rate of franchise fees.

Silverman is a qualified expert in the marketing field. His opinion focuses on the importance of One Hour's brand and how it is distinguished from One Hour's competitors in the area. He describes Dallas Unique's marketing strategy and the numerous similarities between its branding and One Hour's branding. For example, he discusses Dallas Unique's similar clock-themed logo, and similar marketing based on punctuality and professionalism.

Maronick is a Professor of Marketing - he designed and implemented a survey that addressed three main topics: (1) the relative significance to consumers of various marketing

factors in selecting an HVAC service provider; (2) consumers' perceptions of the marks "On Time Every Time," "On Time Experts," and "One-Hour Air Conditioning;" and (3) the message delivered by the use of a stopwatch or clock in promotional materials.

Dallas Unique does not challenge the experts' qualifications. The crux of Dallas Unique's argument is that the experts' opinions are unhelpful and/or unreliable. This basis for exclusion may have some merit if this case were set for a jury trial. But as the Eleventh Circuit acknowledges, there is no need for this Court to be its own gatekeeper. In other words, the Court's gatekeeping obligation is less critical in connection with a bench trial. Therefore, the Court will receive the experts' testimony and will then accord it the weight, if any, it deserves. Dallas Unique may attack the testimony through "[v]igorous cross examination [and the] presentation of contrary evidence." *Daubert,* 509 U.S. at 596.

## II.    Summary Judgment Motions

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

Both parties believe they are entitled to summary judgment on the breach of contract claim.[2] The record reflects, however, numerous material issues of fact. For example, it is disputed whether Dallas Unique's business is sufficiently similar to One Hour's to constitute a breach of the franchise agreement. It is also disputed that, even assuming a breach of the post-termination obligations occurred, said breach was material. There are also disputed facts regarding One Hour's damages. Both parties present conflicting evidence and expert

---

[2] Dallas Unique also argues that One Hour is precluded from asserting breaches that are not specifically pled in the complaint. This argument is without merit because the contractual provisions are stated in the complaint and the additional breaches of those provisions were discussed during discovery. Thus, they come to no surprise to Dallas Unique and are merely additional facts in support of the existing breach of contract claim. This is the natural by-product of the discovery process.

testimony on these issues. Indeed, this is best reflected in their competing motions for summary judgment.

In sum, the Court, at the bench trial, will have to weigh the evidence and decide these disputed issues at that time. It would be inappropriate to determine these issues as a matter of law at this stage.

It is therefore ORDERED AND ADJUDGED that: Defendant Dallas Unique Indoor Comfort, Ltd.'s Daubert Motions (Dkts. 77, 78, 79), Defendant's Motion for Summary Judgment (Dkt. 80), and Plaintiff One Hour Air Conditioning Franchising, LLC's Motion for Summary Judgment (Dkt. 82) are DENIED.

DONE AND ORDERED at Tampa, Florida on this 11th day of September, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-3278.mts-sumjudg-daubert-deny.wpd