## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**ONE HOUR AIR CONDITIONING
FRANCHISING, LLC,**

      **Plaintiff,**

**v.**                              **Case No.  8:13-cv-3278-T-30JSS**

**DALLAS UNIQUE INDOOR COMFORT,
LTD.,**

      **Defendant.**

_____/

## ORDER

Plaintiff One Hour Air Conditioning Franchising, LLC brings this action against Defendant Dallas Unique Indoor Comfort, Ltd. for breach of the parties' franchise agreement.[1]  One Hour claims that the manner in which Dallas Unique continued its residential air conditioning and heating business materially breached the franchise agreement and caused One Hour damages.  On November 2, 3, and 4, of 2015, the Court conducted a non-jury trial.  Having carefully considered the testimony and evidence presented at trial, and for the reasons set forth below, the Court now enters the following Findings of Fact and Conclusions of Law.

_____

[1] Count II (unfair competition), Count III (trademark infringement), and Count IV (false designation) were dismissed with prejudice.  (Dkts. 75, 76).

To summarize, the Court concludes that One Hour did not establish a material breach of the franchise agreement. The Court further concludes that One Hour did not prove damages. As such, final judgment will be entered in Dallas Unique's favor.

## I. FINDINGS OF FACT

### One Hour's Business

Plaintiff One Hour Air Conditioning Franchising, LLC developed a business system for residential air conditioning and heating services and repairs. It operates through authorized franchisees. One Hour's business focuses on the punctuality of its service. One Hour's logo depicts its name with a round-faced stopwatch. Immediately underneath the company name is its trademarked slogan "Always on Time . . . Or You Don't Pay a Dime!" The "always on time" slogan is also prominently featured in One Hour's advertising and marketing materials, as well as in its telephone greeting.

According to One Hour's President, Mark Baker, One Hour's emphasis on punctuality as a foundation of its brand positioning is the essence of One Hour's business. One Hour's Operations Manual, provided to all One Hour franchisees, also states the importance of the "always on time" promise and instructs its franchisees that if they fail to arrive to a client's home during the specified appointment window, they must repair the system at no charge for parts or labor.

The Operations Manual also sets out in approximately 1,380 pages, standards and operating procedures for every aspect of the start-up, management, and daily operation of a One Hour franchise, including but not limited to: pre-opening procedures; inventory;

recruitment; hiring; training; compensation of employees; uniform; dress code and image projection; customer service philosophy; safety procedures; marketing and promotions; and dispatching, scheduling, and servicing customer calls.   Baker referred to One Hour's standards and operating procedures that included the "on time" guarantee as One Hour's "secret sauce;" there was also testimony that the "secret sauce" was One Hour's "system."

One Hour owns a family of registered trademarks for use by its franchisees that include its logo, depicting its name with a round-face stopwatch centered within.  One Hour has trademarked the use of its slogans as follows: "On Time Every Time;" "Always On Time or You Don't Pay a Dime;" and "Service On Time or You Don't Pay a Dime."  Notably, One Hour does not own any trademark for "On Time," standing alone, or for "On Time Experts," or for any mark using the word "Expert."

The "Always on Time" slogan is also featured in One Hour's advertising and marketing materials, as well as in its telephone greeting.  One Hour also trademarked the use of the color yellow on its HVAC service trucks.  A picture of a One Hour service truck is attached as Exhibit A.

According to One Hour's expert, Bruce Silverman, One Hour's unique position as a professional HVAC service company is that it offers a one-hour appointment window and shows up on time.  He testified that this is an important differentiation to consumers. Notably, One Hour offers its customers a number of different service windows with different prices.  For example, a one-hour window of time is associated with a higher price than a two-

hour window of time.  A technician's failure to timely arrive for the selected window of time results in the customer not "paying a dime."

### Dallas Unique's Business before Becoming a One Hour Franchisee

From at least the 1960s, Defendant Dallas Unique Indoor Comfort, LTD. and its corporate predecessors operated as a commercial and residential heating and air conditioning company in the Dallas Metroplex area under variations of the name Dallas Unique Indoor Comfort.  Randy Kelley is the current President and majority owner of Dallas Unique.  He has been employed by Dallas Unique and its predecessors since 1986.

In 2000, *prior* to becoming a One Hour franchisee, Kelley joined Air Time 500.  Air Time 500 was created by John Young and Jim Abrams as a best practices organization that taught and trained its members how to effectively operate a commercial and residential heating and air conditioning company.  Notably, John Young and Jim Abrams also later created One Hour.  For a fee, Air Time 500 provided professional training instruction on virtually every aspect of operating a successful HVAC business.  For example Defendant's Exhibits 91-99 demonstrate examples of Air Time's professional instructions on areas such as building a successful team, presenting an image of success, "success on the phone," performing background checks, and other areas of importance.

Air Time 500's training materials were nearly identical to the training materials One Hour provided to its franchisees in One Hour's Operations Manual; the only significant difference was that Air Time 500 did not suggest an "on time" guarantee associated with the

technician arriving to his service window on time, although it did recommend a guarantee of "Fix today or you don't pay."

Kelley worked for Air Time 500 as a trainer and continued to work as an Air Time trainer after becoming a One Hour franchisee.  Specifically, on nearly a monthly basis, Kelley would travel to different training events for Air Time 500's members and engage in a role-playing activity that demonstrated how a technician should behave during a customer call.

### The Parties Enter into the Subject Franchise Agreement

In 2004, Dallas Unique's predecessor executed five separate but identical franchise agreements with One Hour for territories in the Dallas-Ft. Worth metropolitan area.  Dallas Unique became the franchisee through an addendum to the franchise agreements.  The franchise agreement allowed Dallas Unique to operate a residential air conditioning and heating company as a One Hour franchisee for a ten-year term.  Dallas Unique operated under the name "One Hour Air Conditioning & Heating."  Under the franchise agreement, Dallas Unique was permitted to use One Hour's licensed trademarks.  Notably, the franchise agreement between One Hour and Dallas Unique did not contain a non-compete agreement. As a long-standing existing business, Kelley had negotiated One Hour's standard non-compete clause out of the franchise agreement, along with a few other provisions.  One Hour also agreed that, contrary to its standard agreement, the customers would remain with Dallas Unique upon termination.

Kelley testified that the One Hour "secret sauce" or system that One Hour provided to its franchisees was the same system that Air Time 500 taught its members and that Kelley had previously utilized. The only difference was One Hour's appointment time price guarantee, i.e., the "on time" guarantee. Kelley acknowledged that his business did not offer the "on time" guarantee prior to Dallas Unique becoming a One Hour franchisee.

## Dallas Unique Terminates the Franchise Agreement and Operates as "On Time Experts"

In 2013, Kelley and Baker discussed the possible renewal of the franchise agreement. The negotiations were unsuccessful, mainly because One Hour was no longer willing to allow customers to remain Dallas Unique's customers upon termination as provided in the original franchise agreement. As such, Dallas Unique decided to terminate the franchise agreement with One Hour.

Specifically, on December 24, 2013, Kelley provided written notice of Dallas Unique's termination of the franchise agreement in an e-mail to Baker. The termination was effective on December 31, 2013.[2] The e-mail stated that Dallas Unique intended to continue operating a residential air conditioning business in the Dallas-Ft. Worth area and that it would be operating under its new name, "On Time Experts." The e-mail included a picture of Dallas Unique's new color scheme and logo, as depicted on one of its service vehicles. The logo consisted of the name "On Time Experts" next to a round-faced clock imposed on a running figure holding a wrench. There was also the following slogan in its promotional

---

[2] Notably, One Hour filed this action on December 31, 2013. (Dkt. 1).

materials: "When Comfort Can't Wait!"  The slogan was not located on the trucks.  A picture of On Time Experts' service truck is attached as Exhibit B.

Kelley testified that, in his experience of being in the HVAC business for many years, there is nothing unique about an air conditioning company using some aspect of timeliness in its name.  On Time Experts does not offer a one-hour appointment window.  It offers either a four-hour service window or a two-hour service window to its customers.  He admitted that he has a guarantee to show up "on time" but it appears only on his website and in some print advertising "here and there."  He acknowledged that the guarantee was just like One Hour's price guarantee.  He does not have a slogan or a tag line associated with On Time Experts' price guarantee.

In the summer of 2013, Kelley worked with a logo design and branding company called Graphic D-Signs to develop the new company logo and color scheme.  Dan Antonelli is Graphic D-Signs' CEO and Creative Director.  Graphic D-Signs works with small service businesses like HVAC contractors, plumbers, electricians, handymen, and home improvement companies.  Antonelli has branded or re-branded almost 1,000 companies.

Kelley told Graphic D-Signs that he wanted the new company's primary color to be a bright orange—what Kelley described as "highlighter orange"—because none if his competitors in the area were using that color.  Kelley did not like any of the names proposed by Graphic D-Signs and ultimately decided that the new company name would be "On Time Experts."  It was important to Kelley to send a message to his customers of arriving "on

time." He also wanted a generic name to allow his business to expand at some future time to other areas, like plumbing and electrical services.

### The Relevant Post-Termination Obligations and One Hour's Claims of Breach

The franchise agreement includes post-termination obligations, two of which form the basis of One Hour's breach of contract claim in this case in Section 16.6(D) and Section 16.6(E). Specifically, under Section 16.6 "Franchisee's Obligations on Termination or Expiration," the "Franchisee shall forthwith cease to be a franchisee of Franchisor and shall immediately:"

> D.    cease to operate the Franchised Business under the System or otherwise and thereafter not, directly or indirectly, represent to the public that such Franchised Business is operated in association with Franchisor or the System, or hold itself out as a present or former franchisee of Franchisor;

> E.    cease to use, directly or indirectly, in advertising or in any other manner whatever any of the Licensed Marks, any name or mark *similar* to any of the Licensed Marks, any other identifying characteristics or indicia of operation of the System, and any confidential standards, methods, procedures and specifications associated with the System.

(emphasis added).

"Franchised Business" is defined in Section 2.1(N) and Section 1.1 of the franchise agreement as a One Hour "residential air conditioning and heating services, maintenance, repairs and equipment replacement business." The "System" is defined in Section 2.1(MM) as "the specified business format and system and related standards, specifications and

procedures that Franchisor has for operating a Franchised Business, including but not limited to, the Operations Manual and System Standards."

The franchise agreement does not define the word "similar." It also does not define the term "identifying characteristics" or "indicia of operation."

One Hour's breach of contract claim focuses on Dallas Unique's operation of "On Time Experts," with the logo of a sprinting clock, and Dallas Unique's use of other performance methods of One Hour's System that are provided to One Hour's franchisees in the Operations Manual.

On Time Experts' website offers a "Your Time Guarantee" that states that if the technician is even one minute late, the service or repair is free. On Time Experts also offers the following guarantees, which are guarantees that One Hour offers: a "No Lemon Guarantee;" a "Peace of Mind and Total Service Guarantee;" a "Property Protection & Client Respect Guarantee;" and a "Total Comfort Guarantee."

Like One Hour's website, On Time Experts' website states that its "Comfort Consultants" are "background-checked, drug-tested, licensed, trained and EPA certified" and that its technicians wear protective covers on their shoes and use drop cloths to protect the floors.

One Hour's Operations Manual provides a phone greeting script that all franchisees are required to follow, including the telephone greeting "It's a great day at One Hour Air Conditioning, where we're always on time or you don't pay a dime. This is so-and-so. How can I save you time today?" The telephone at the office of On Time Experts is answered with

the greeting "It's a great day at On Time Experts. We're never late because comfort can't wait. I'm so-and-so. How can I help [you]?"

One Hour contends that these similarities, among others, such as On Time Experts' use of One Hour's "secret sauce" violate Section 16.6(E). The Court disagrees and finds that Dallas Unique's operation is not "similar." This will be discussed in more detail under the Court's conclusions of law. But the following testimony is instructive on this issue.

Dallas Unique's expert, Rhonda Harper, conducted a customer confusion survey. She testified that, after being shown side by side color photographs of One Hour and On Time Experts' service trucks, 93% of respondents said they were from two different, independent companies. When shown the two company names and logos, the results were similarly compelling. There, 88% of respondents said the logos were from two different, independent companies.

Antonelli's deposition testimony discussed the differences in the companies' names, logos, and brand. For example, the timepiece depicted in One Hour's logo is a stopwatch, not a clock. And One Hour's stopwatch is an actual stopwatch, whereas Dallas Unique's clock is not an actual clock, but a representation of a clock incorporated into the body of a running, stick-figure service technician.

There are other objective dissimilarities. The colors are different. Dallas Unique's logo uses PMS Orange 021, PMS Blue 7463, PMS Blue 2718, and white. One Hour uses PMS Red 192, PMS Yellow 109, and black. The fonts are different. Dallas Unique uses the "Pluto" font and One Hour uses "ITC Optima Italic." One Hour's use of all capital letters

is reminiscent of the ABSOLUTtm vodka ads that were prevalent in the 1980s and 90s. Dallas Unique's logo is rendered in upper and lower case letters and is more modern.

The only common words in the two logos are used differently.  In One Hour's logo, the words "On Time" appear only in its tagline, "Always On Time . . . Or You Don't Pay A Dime!"  On its service trucks and elsewhere, the tagline appears in the smallest font as the third line of the overall logo.  In contrast, in the On Time Experts' logo, the "On Time" is the first line and appears in the largest font.

The icons are also portrayed differently.  In One Hour's logo, the stopwatch appears in between the words "One" and "Hour" and is vertically not much larger than the font.  In contrast, the running man icon in On Time Experts' logo is to the left of the name and is vertically taller than all three lines of text combined.

Antonelli also confirmed, using a reverse Google image search, that On Time Experts' logo was not similar to any other company's logo.

The Court finds that nothing about On Time Experts' name, logo, colors, or presentation evokes the One Hour business.  The Court also finds that any of the other alleged breaches of Section 16.6(E) with respect to On Time Experts' use of One Hour's "secret sauce" or "system" do not fall within the contract language of "Licensed Marks, any other identifying characteristics or indicia of operation of the System, and any confidential standards, methods, procedures and specifications associated with the System" because, with the one exception of the "on time guarantee," they relate to basic industry best practices, as taught by Air Time 500 and other companies, like Next Star.

With respect to Section 16.6(D), One Hour claims that Dallas Unique violated this provision of the franchise agreement for a brief period of time in January 2014.  The facts relevant to this alleged breach are as follows.  Kelley testified that after he notified Baker on December 24, 2013, of Dallas Unique's termination of the franchise agreement, he thought he had a thirty-day grace period to change his trucks, logo, and other identifying characteristics from One Hour to his new business On Time Experts.  He started to take steps to have his trucks changed but, as of early January 2014, all of the trucks had not been completely altered.  On or about January 2, 2014, he was informed that there was no grace period in the contract.  Kelley then immediately started to have the remaining trucks blanked out, so that they no longer reflected any information relating to or describing One Hour.  By February 2014, all of the trucks had been re-wrapped or blanked out.

Kelley also admitted that he issued a press release dated January 2, 2014, announcing his company's transition from a One Hour franchise to On Time Experts that stated "Simply put, we are the same Company and the Same People."

One Hour did not present any evidence of damages associated with these technical breaches of Section 16.6(D) of the franchise agreement—that is, the breaches associated with the period of time when Kelley transitioned the business and trucks from One Hour to On Time Experts and the breach associated with the press release.

The Court now turns to its Conclusions of Law in light of these findings of fact.

## II. CONCLUSIONS OF LAW

The parties agree that Florida law applies here.  A breach of contract under Florida law requires the following elements: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law).  The Court concludes that the evidence presented at the bench trial does not establish a breach of contract under either Section 16.6(D) or Section 16.6(E) of the franchise agreement.

### A.    Section 16.6(D)

Although the Court finds that, in January 2014, Dallas Unique technically breached Section 16.6(D) to the extent that Kelley did not complete the transition of his business from One Hour to On Time Experts and, on one occasion, represented to the public that On Time Experts was a former franchisee of One Hour, no damages have been proven from these breaches.  Damages are a required element of a breach of contract case.  Moreover, as of February 2014, Kelley was in compliance with Section 16.6(D).  Notably, because the breach was not "continuing," One Hour is also not entitled to an injunction.  In conclusion, One Hour did not establish a breach of Section 16.6(D) of the franchise agreement.

### B.    Section 16.6(E)

(i)    No material breach of Section 16.6(E)

One Hour has not established a material breach of Section 16.6(E) because One Hour failed to establish that On Time Experts' new name, in conjunction with the "Clock-Themed Logo and Color Scheme" caused the public to perceive the two companies as related or

associated.  In other words, On Time Experts' business is not "similar" to any of One Hour's

"Licensed Marks."   Notably, although the Court agrees with One Hour that customer

confusion, an element of a trademark claim, is not an element of a breach of contract claim,

trademark law is instructive on the issue of whether One Hour and On Time Experts are

"similar."  Florida law makes clear that any agreement in "restraint of trade" is "in derogation

of common law and must be strictly construed against the alleged restraint."  *See Weintraub*

*v. Roth*, 617 So. 2d 1158, 1159 (Fla. 4th DCA 1993); *see also* Fla. Stat. § 542.335.  Section

16.6(E) is clearly attempting to operate as a restraint on trade because it controls the terms

under which Dallas Unique can operate a competing business.   Thus, under a strict

construction of the franchise agreement, the word "similar" must be construed narrowly.

That is, Dallas Unique's competing operation cannot be "similar" to the extent that it is

confusingly similar or harmfully similar.

   The evidence presented at trial did not establish any confusion or material harm

stemming from the operation of On Time Experts.  Harper's expert testimony demonstrated

that there is no consumer perception that One Hour and On Time Experts are in any way

related or associated.   Antonelli's deposition testimony also discussed the material

differences between the two companies.  Thus, with respect to On Time Experts' service

trucks' appearance, logo, color scheme, and overall brand, there is insufficient "similarity"

to establish a material breach of Section 16.6(E).

   With respect to the other alleged breaches—that is, On Time Experts' use of

guarantees that come from One Hour's "secret sauce" or "System"—the evidence did not

establish that any of these best practices are unique to One Hour; in other words, they are not "identifying characteristics" or "indicia of operation of the system" because they are standard best practices as taught by Air Time 500 and others.  Simply put, they are all characteristics of a professional HVAC operation.  They may be part of a "sauce," but that sauce is certainly not "secret" as One Hour contends.

Although On Time Experts' use of a similar price guarantee gives this Court some pause, the Court concludes that this use is also not a material breach of the franchise agreement.  The evidence showed that On Time Experts' similar on time/price guarantee is referenced only on its website and a few print ads.  On Time Experts does not offer a one-hour window of time.  And a price guarantee is a generic concept; for example, many companies offer price guarantees and almost all HVAC companies offer some kind of window of time with respect to the scheduling of appointments.  One Hour did not present any evidence demonstrating that it has cornered the market on the concept of timeliness.  Thus, any use of a similar on time price guarantee is not a material breach of Section 16.6(E).

Section 16.6(E) does not state that Dallas Unique cannot offer on time or other professional guarantees to its customers.  And it certainly does not say that Dallas Unique cannot offer its customers the same services that are typical in the industry, like performing drug-tests and background checks on service technicians and using drop cloths and shoe covers to keep the area clean.

In sum, any construction of Section 16.6(E) that permits a finding of breach in the absence of some customer confusion risks turning this clause into a generalized form of a

noncompetition clause.  The Court concludes that One Hour failed to establish a material breach of Section 16.6(E).

      (ii)    <u>No damages stemming from any breach of Section 16.6(E)</u>

Finally, even if the Court assumed that Dallas Unique violated Section 16.6(E), the Court concludes that One Hour did not present any evidence of damages stemming from any breach.  The evidence that was presented was too speculative and hypothetical to establish money damages flowing from any breach.  And the evidence also did not establish that a permanent injunction would be appropriate.

It is therefore **ORDERED AND ADJUDGED** that:

1.    The Clerk of Court is directed to enter Final Judgment in favor of Defendant and against Plaintiff.

2.    The Clerk of Court is directed to close this case and terminate any pending motions as moot.

3.    Any motion for attorney's fees and costs shall be filed within fourteen (14) days of this Order and shall include a certificate of counsel conference.

**DONE** and **ORDERED** in  Tampa, Florida on November 13, 2015.

                              JAMES S. MOODY, JR.
                              UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>

Counsel/Parties of Record

**EXHIBIT A**



**EXHIBIT B**

